

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
GULFPORT DIVISION

U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI
FILED

SEP 0 1 2006

CHARLENE J. KENNEDY, CLERK
BY_____DEPUTY

IN RE:

**GLENN DAVID BROWN,**

CHAPTER 11

DEBTOR.

CASE NO. 05- 55925-NPO

**AMENDED MOTION FOR ASSUMPTION
AND ASSIGNMENT OF EXECUTORY
CONTRACT PURSUANT TO 11 U.S.C. § 365**

## MEMORANDUM OPINION

On July 18, 2006, there came on for hearing (the "Hearing") the Amended Motion for Assumption and Assignment of Executory Contract Pursuant to 11 U.S.C. § 365 (the "Motion") (Dk No. 99) filed by Glenn David Brown (the "Debtor") and the Objection thereto (the "Objection") (Dk No. 103) filed by Northeast Inn of Meridian, Inc. ("Northeast") in the above-styled chapter 11 proceeding. At the Hearing, the Debtor was represented by Luke Dove and Northeast was represented by Don Rogers. After both parties rested, the Motion and the Objection were taken under submission and the parties were instructed to submit legal memoranda in support of their respective positions. The Court, having considered the evidence, arguments of counsel, legal authorities, and otherwise being fully advised in the premises, finds as follows:

1. The Court has jurisdiction over the parties to, and the subject matter of, this proceeding pursuant to 28 U.S. C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157 (b)(2).

2.      On March 29, 2002, the Debtor entered into the Lease Agreement (the "Lease") (Ex. 1)[1] with Northeast for certain real property and improvements thereon (the "Leased Premises") that the Debtor uses to operate a Krystal restaurant (the "Franchise") located in Meridian, Mississippi. Although the Lease is in the Debtor's name individually, the Franchise is owned by a separate corporation, Glen Brown Enterprises, Inc. (Ex. 9).

3.      The Lease provides for a primary term of ten (10) years with two (2) renewal terms of five (5) years each. The Lease further provides for payments in the amount of $5,000 for the initial five (5) years of the primary term, increasing to $5,500 for the subsequent five (5) years of the primary term, and for payments of $6,050 for the first renewal term, increasing to $6,650 for the second renewal term (the "Lease Payments"). (Ex. 1 at ¶ 3).

4.      Paragraph 7 of the Lease provides:

> The Lessee shall maintain general liability insurance coverage with a carrier acceptable to Lessor in a minimum amount of $1,000,000.00. This coverage shall include the Lessor as a named insured.

5.      Paragraph 13 of the Lease provides:

> The Lessor shall have the right to enter and take possession of the premises if any part of said rent shall be in arrears for a period of sixty (60) days, or if the Lessee shall otherwise fail to observe the terms and conditions of this contract and lease agreement.

---

[1] Based on the testimony of the Debtor regarding his longstanding social friendship and business relationship with Richard Wilbourn, the previous owner or operator of Northeast who entered into the Lease with the Debtor (Tr. at 65-66), the Court recognizes that the Lease may not contain common commercial terms. Accordingly, this Memorandum Opinion should be limited to its facts.

6.      On October 19, 2005, the Debtor filed a voluntary petition (the "Petition") (Dk No. 1) under chapter 11 of the Bankruptcy Code.[2]

7.      In his Motion, the Debtor seeks to assume and assign the Lease to Glenn Brown Enterprises #2, a corporation which is wholly owned by the Debtor.[3]

Section 365(b)(1) provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee[4] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee - -
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> . . . . ; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

Thus, § 365 first requires a bankruptcy court to determine whether a default exists in regard to an executory contract or unexpired lease of a debtor.

The parties agree that at the time of the filing of the Petition, a default existed and the amount in default under the Lease was $28,000. (Tr. at 17, 111).  In the Motion, the Debtor initially proposed to cure the default under the Lease by paying (a) $8,000 in cash upon entry of a final order

---

[2] Hereinafter, all code sections refer to the United States Bankruptcy Code, located at Title 11 of the United States Code, unless otherwise noted.

[3] At the Hearing, the Debtor's counsel represented to the Court that the Krystal Franchise also will be assigned to Glenn Brown Enterprises #2. (Tr. at 12).

[4] Pursuant to § 1107 and subject to certain limitations not relevant to the matter before the Court, a debtor in possession shall have all the rights and powers and shall perform all the functions and duties of a trustee serving in a case under chapter 11.

allowing the Debtor to assume the Lease or upon entry of a final order approving a Debtor's plan of reorganization[5] allowing assumption of the Lease and (b) $1,667 per month for twelve (12) months thereafter until the balance of the default in the amount of $20,000 is cured.

Northeast objects to the Motion contending that the Lease was terminated prepetition either by the Debtor's failure to provide proof of insurance or by the Debtor's failure to make the Lease Payments as required. Alternatively, Northeast contends that the Debtor's proposal to cure the default over a period of twelve (12) months is not prompt cure and that the Debtor has not provided adequate assurance of future performance as required by § 365.[6]

### Prepetition Termination

The first issue before the Court is whether the Lease was terminated prepetition as a result of the Debtor's failure to provide proof of insurance and to make the required Lease Payments. With respect to the insurance issue, Northeast presented at the Hearing correspondence dated August 26, 2005, requesting proof of insurance coverage from the Debtor within five (5) days. (Ex. 10). However, paragraph 7 of the Lease requires only that the Debtor maintain insurance. Moreover, at

---

[5] Although the Debtor has filed a disclosure statement (Dk No. 66) and chapter 11 plan of reorganization (Dk No. 67), neither has been set for hearing pending a determination of whether the Lease may be assumed and assigned. (Tr. at 10-11). Moreover, at the Hearing, the parties and the Court concurred that a determination as to the Objection to Proof of Claim of Northeast filed by the Debtor (Dk No. 70) and the Response thereto by Northeast (Dk No. 84), pleadings which are currently pending before the Court, should be made following the issuance of this Memorandum Opinion. (Tr. at 118-119).

[6] In its Objection, Northeast also contends that the assignment of the Lease is conditional upon its approval and that Northeast has not consented to such an assignment. *See* Ex. 1 at ¶ 11 ("The Lessee is hereby given the right and privilege to assign this lease, in whole or in part, but must first secure the written consent of the Lessor therefor. The Lessor covenants that it will not arbitrarily or unreasonably withhold its consent to the assignment of this lease."). However, in that no evidence was presented on the anti-assignment issue at the Hearing nor was it briefed for the Court's review, Northeast appears to have abandoned that objection. (Tr. at 113-114).

4 of 9

the Hearing, Northeast's counsel conceded that the Debtor provided proof of insurance ten (10) days after the deadline and that he did indeed have insurance coverage as required by the Lease. (Tr. 17-20). The Court thus finds that the Lease was not terminated prepetition for the Debtor's failure to maintain insurance coverage.

The second argument before the Court is whether the Lease was terminated prepetition by the Debtor's failure to make the Lease Payments. As noted previously, paragraph 13 of the Lease provides that Northeast has the right to enter and take possession of the Leased Premises if any part of the rent is in arrears for a period of sixty (60) days. It is undisputed that the Debtor was sixty (60) days in arrears in the amount of $28,000 at the time of filing the Petition. (Tr. at 17, 111). Yet, the evidence presented at the Hearing demonstrated that Northeast granted the Debtor an extension of time until October 20, 2005, to remit the entire past due amount under the Lease. (Ex. 11). The Debtor filed the Petition on October 19, 2005, prior to expiration of the extension. Moreover, even though the letter which granted the extension of time included a statement by Counsel for Northeast that during a previous conversation the Debtor had agreed to turn over his keys and vacate the building if the Lease Payments were not brought current by October 20, 2005, the Debtor disputed that he had ever made such a statement although he admitted that he had agreed to "try to get the money." (Tr. at 81).

It is well established that "[a]ny act of the landlord which affirms the existence of the lease and recognizes the tenant as the lessee after the landlord has knowledge of the breach of the lease results in the landlord's waiving the right to forfeiture of the lease." 52 *C.J.S.* Landlord & Tenant § 184 (2006); *see also* Columbus Hotel Co. v. Pierce, 629 So. 2d 605 (Miss. 1993) (it is wise to avoid forfeiture, even where a contract mandates forfeiture, if an equitable remedy such as the return

of the complaining party to the position he would have occupied had the breach not occurred, is available).  Given the disputed testimony concerning letters and conversations on the subject of termination, as well as the admonition that "terminating a contract is viewed as an extreme remedy and should be granted sparingly," <u>Ladner v. Pigg</u>, 919 So. 2d 100 (Miss. Ct. App. 2005),  the Court is unpersuaded that the Lease terminated prepetition based on the Debtor's failure to make the Lease Payments.[7]

### Adequate Assurance of Prompt Cure

The third issue the Court must consider is whether the Debtor's proposal to pay $8,000 cash and $1,667 per month for the subsequent twelve (12) months constitutes adequate assurance of a prompt cure of the default in accordance with § 365.  At the Hearing, the Debtor's brother and financial advisor, Cecil Brown, testified that he would deposit $20,000 in trust to guarantee the Debtor's payments over the twelve (12) month period. (Tr. at 57).  While Northeast concedes that the guarantee constitutes adequate assurance of payment, it nevertheless maintains that the cure is not "prompt."  Northeast contends that if the $8,000 payment is contingent upon the entry of an order approving the Debtor's plan of reorganization and the $1,667 payments are to be made thereafter over the course of one (1) year, "cure" likely will not be completed until more than two (2) years after the filing of the Debtor's bankruptcy case.

Although the Bankruptcy Code does not define the term "promptly," case law provides that the amount of time necessary to be considered as "prompt" varies in accordance with the facts and

---

[7] The Court further observes that in regard to the Lease, Northeast's counsel made the following statements at the Hearing: "We were in the process of terminating it, and Mr. Brown and I had an agreement that on the 20th of August he would either bring it current or he'd turn in his keys to terminate it.  On October the 19th, he filed bankruptcy.  So it had not been terminated." (Tr. at 20).

circumstances of each case. In re PRK Enter. Inc., 235 B.R. 597 (Bankr. E.D. Tex. 1999). Furthermore, the Court may consider the nature of the leased property, the provisions of the lease, the amount of arrearage under the lease, the remaining term of the lease, and the provisions of a debtor's proposed plan. In re Reed, 226 B.R. 1 (Bankr. W.D. Ky. 1998).

In this case, the Lease is the Debtor's major asset. The income which will fund any plan is derived from the Krystal restaurant that is housed on the Leased Premises. (Tr. at 11). In response to various issues raised by Northeast concerning the requirement for a prompt cure, the Debtor has agreed to make the cash payment upon the entry of the Order granting assumption and assignment of the Lease rather than upon confirmation of the Debtor's plan. (D's Br. at 9). Therefore, while the amount of the arrearage is fairly substantial, cure will be completed within approximately thirteen (13) months of the entry of this Order with nearly five (5) years yet remaining on the primary term of the Lease.[8]

Application of the principles of the authorities cited herein to the instant case persuades the Court that the Debtor's proposal provides a "prompt" cure, subject to the incorporation of the additional provisions proposed by the Debtor and set forth within this Memorandum Opinion. To that end, the Court finds that the Debtor should, on or before September 15, 2006, pay $8,000 to Counsel for Northeast, and should thereafter, beginning on October 1, 2006, pay the balance of the default in the amount of $20,000 to Counsel for Northeast in equal monthly installments over a

---

[8] The Debtor has made additional modifications to the relief proposed in the Motion to address certain concerns raised by Northeast, including the Debtor's proposal to remit the $8,000 cash payment upon entry of this Order, pay interest on the amount paid over one (1) year, have Cecil Brown place $20,000 in a trust account to guarantee payment of the monthly payments, and have Glenn Brown Enterprises #2 guarantee or assume liability for all payments due under the Debtor's confirmed chapter 11 plan.

period of twelve (12) months on the first of each month with interest at the rate of 8%. The Court

further finds that Cecil Brown should, on or before September 15, 2006, place $20,000 in an interest

bearing trust account with the Debtor's Counsel to guarantee payment of the Debtor's monthly

payments to Northeast. In the event the Debtor fails to remit any monthly payment to Northeast,

Counsel for Northeast should notify Counsel for the Debtor within five (5) business days of the

missed payment and the Debtor's Counsel should thereafter remit the missed payment to Counsel

for Northeast within five (5) business days of such notification.

### Adequate Assurance of Future Performance

Finally, the Court must determine whether the Debtor has provided adequate assurance of

future performance in accordance with § 365. As with "prompt" cure, the Bankruptcy Code does

not define what constitutes adequate assurance of future performance. The Fifth Circuit has held

that some factors that should be considered include "whether the debtor's financial data indicated

its ability to generate an income stream sufficient to meet its obligations, the general economic

outlook in the debtor's industry, and the presence of a guarantee." Texas Health Enter. Inc. v. Lytle

Nursing Home, 72 Fed. Appx. 122, 126, 2003 WL 21770822, *2 (5th Cir. 2003); see also In re PRK,

236 B.R. at 602 (assurance of future performance is adequate if performance is likely).

At the Hearing, the evidence demonstrated that the Debtor has made all Lease Payments

since the filing of the Petition. (Tr. at 75). The evidence further demonstrated that the income from

the Krystal operation should be sufficient to pay all future Lease Payments as they become due in

that profits are projected to increase over the next six (6) months. (Ex. 3). The Debtor also testified

that he has hired new management for the Krystal, including a manager who was a former employee

of Northeast. (Tr. at 96, 99). He also is seeking financial advice from a qualified financial advisor.

(Tr. at 26-63).  The Debtor further testified that he has streamlined his business operations such that the Krystal is the only restaurant he is currently operating, whereas in the past he has been involved in several business ventures at the same time.  (Tr. at 96).  Additionally, the Debtor's testimony established that a new hotel is being built next to the Leased Premises by Northeast.  (Tr. at 66, 68). Lastly, through his bankruptcy case, the Debtor intends to seek court approval of a corporate restructuring that would result in all assets connected with the Krystal business being transferred into one entity, Glenn Brown Enterprises #2.  For these reasons, the Court is persuaded that the Debtor will have provided Northeast with adequate assurance of his future performance in regard to the Lease by the terms of this Memorandum Opinion.

Given the circumstances of the case and for all the reasons set forth herein, the Court finds that the portion of the Motion seeking approval for the assumption of the Lease by the Debtor should be approved as modified by this Memorandum Opinion.  The other portion of the Motion, seeking approval of the subsequent assignment of the Lease to Glenn Brown Enterprises #2, should be granted, contingent upon confirmation of the Debtor's chapter 11 plan.  The Court further finds that the assignment of the Lease should also be contingent upon the execution of an assumption of the liabilities by Glenn Brown Enterprises #2 for all payments due under the Debtor's confirmed chapter 11 plan.

A separate order consistent with this Memorandum Opinion will be entered by this Court in accordance with  Federal Rule of Bankruptcy Procedure 9021.

DATED this the 1st day of September, 2006.

NEIL P. OLACK
UNITED STATES BANKRUPTCY JUDGE